**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Raymone K. Bain, *et al.*,  :
                           :
    Plaintiffs,       :
                           :
  v.                       : Civil Action No. 09-0826 (JR)
                           :
MICHAEL J. JACKSON, *et al.*, :
                           :
    Defendants.       :

### **MEMORANDUM**

Prior to Michael Jackson's death in June 2009, Raymone K. Bain brought this case against him and his production company, MJJ Productions, Inc., asserting claims for breach of contract, quantum meruit, and unjust enrichment. Bain became Jackson's publicist in December 2003, but the suit arises out of the expanded role Bain took in Jackson's affairs beginning in the middle of 2006. On May 30, 2006, Jackson signed a Personal Services Agreement ("PSA"), drafted by Bain, that entitled Bain to a ten percent finder's fee for any agreement Jackson entered that she or her associates generated. [#3-1]. Around this time, Jackson also hired Bain as his personal General Manager, [#3-2], and as his agent to review and approve music usage requests, [#3-3].

Bain alleges that she initiated negotiations for several projects on Jackson's behalf in early 2007, including: (1) a project with SONY Music to promote the 25th anniversary of Jackson's *Thriller* album release ("*Thriller* deal"); (2) Jackson's

participation at the 2008 Grammy Awards ceremony; (3) a project with the Anschutz Entertainment Group, Inc. for development of the Neverland Valley Ranch, recording and film projects, and live performances at the O2 Arena in London ("AEG project"); and (4) Jackson's refinancing of his loan against the SONY/ATV music catalog ("SONY/ATV refinancing").[1]  Shortly after the refinancing, but before the other projects were finalized, Jackson abruptly cut ties with Bain, without paying the ten percent finder's fee on any of Bain's projects.  Because Jackson ultimately cemented the agreements and earned money on them in 2008, Bain believes she is now entitled to a ten percent finder's fee for each deal pursuant to the PSA.  She seeks $44 million in damages, plus attorney's fees and costs. [#3]

On June 18, 2009, the Jackson parties moved to dismiss Bain's claims, arguing that Bain's suit was barred by a release she signed on December 27, 2007 that discharged the Jackson parties from any future claims and payments.  [#24].  Jackson died eight days later, on June 26, 2009.  I stayed further proceedings pending the appointment of an executor for Jackson's estate.  I also notified the parties that the motion to dismiss would be treated as a motion for summary judgment and invited

---

[1] Bain also attempts to take credit for another deal – one involving use of Jackson's music in a Vitamin Water advertisement aired during the Superbowl [#49] - but I have denied her motion to amend her complaint.  [#50]

them to submit all additional material pertinent to the motion. [#31]. I dissolved the stay on November 20, 2009. The parties then filed supplemental briefing and affidavit testimony regarding the release and addressing Bain's new allegation that the release was fraudulently obtained. [#48, #54, #59, #60, #61].

The Jackson parties replied with their own new (alternative) argument – that the binding arbitration clause in the Release requires dismissal or a stay in this case. Under New York law, the contractual right to arbitrate may be waived, when the requesting party "engaged in litigation to such an extent as to manifest[] a preference clearly inconsistent with [its] later claim that the parties were obligated to settle their differences by arbitration and thereby elected to litigate rather than arbitrate." See, e.g., Les Constructions Beauce-Atlas, Inc. v Tocci Bldg. Corp. of New York, Inc., 294 A.D.2d 409, 410 (N.Y. App. Div. 2002) (internal quotations omitted). To avoid waiver, a party must raise its desire to arbitrate promptly and must decline to avail itself of pre-trial discovery and other attempts to litigate on the merits. Id.

The Jackson parties' first filing did not raise the arbitration issue. Rather, they elected to address the merits of Bain's claim, and did not invoke their right to arbitration - presumably realizing that the case would not be resolved quickly

on the merits - until filing a reply brief on the motion to dismiss on July 10, 2009. [#29, at 4-6]. I find that the Jackson parties' initial filings invoked the judicial process to such an extent that their right to arbitrate has been waived.

Therefore, I must determine whether the Release covers the fees Bain now demands, and, if it does, whether the Jackson parties had a duty to disclose the status of those deals at the time Bain signed the release.[2]

The Release, which the parties agree is governed by New York law, states that Jackson "shall render a payment made payable to you in the amount of [$488,820.05] as full and final satisfaction of any all [sic] monies, known or unknown, to be owed to you by the Jackson Parties with respect to any and all agreements whether verbal or written that you may have entered into with the Jackson Parties from the beginning of time until December 27, 2007." [#27-2 at 20].

Bain argues that this language does not preclude her from seeking a finder's fees pursuant to the PSA, because she intended the Release to cover only specific, past-due cash disbursements, loans, credit card bills, and consultant fees, in the amount of $488,820.05. As evidence of her intent, she cites

---

[2] The "tender back doctrine" is not applicable here, where Bain is indisputably entitled to the payment she retained, and where that amount would be credited to the defendants if Bain were to succeed in her claim. See Goldfarb v. Wright, 40 N.Y.S.2d 705, 707-709 (N.Y. App. Div. 1943).

her hand-written edits to the Release, itemizing the payments she intended to release, [#27-2 at 20], and she explains that Jackson's attorney, Frank Salzano, represented, in his 12/03/07 email, that the Release was necessary "to clean all past debts and liabilities of Mr. Jackson," [#60-2].

Under New York law, the rule is that "a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between the parties," even if one of the parties claims he intended a narrower release. See, e.g., Chaudhry v. Garvale, 262 A.D.2d 518, 519 (N.Y.A.D. 2 Dept, 1999). Because I find no ambiguity in the language of Bain's Release, I may apply it without considering Bain's testimony about her intent. Consolidated Edison, Inc. v. Northeast Utilities, 332 F.Supp.2d 639, 647 (S.D.N.Y. 2004). The Release unambiguously covers "all monies, <u>known or unknown</u>," owed under "any and all agreements whether written or verbal." (emphasis added) That release language covers Bain's claims about the *Thriller* deal, the Grammy ceremony, the AEG project, and the SONY/ATV refinancing, no matter what stage they were in when the release was signed.

But Bain goes on to argue that, even if the Release does cover her claims, it is void because she was fraudulently

induced to sign it, or, alternatively, because she was mistaken as to is effect.

To establish fraud-in-the-inducement under New York law, Bain must prove that the Jackson parties (1) made a material representation or omission which was false and known to be false (2) for the purpose of inducing her to rely on it, and (3) that Bain reasonably relied upon it in entering the agreement (4) to her detriment. See, e.g., Lama Holding Co. v. Smith Barney, Inc., 88 N.Y.2d 413, 421 (N.Y. 1996). Where the claim is that the defendant fraudulently concealed a material fact to procure the agreement, the plaintiff must show that the defendant had a duty to disclose the concealed information. See, Sitar v. Sitar, 61 A.D.3d 739, 741 (N.Y. App. Div. 2009). Absent a fiduciary relationship between the parties, a duty to disclose arises only where one party possesses superior knowledge of essential facts that makes a transaction inherently unfair – if those facts are not disclosed, those facts are not readily available to the other party, and the first party knows that the second party is acting on the basis of mistaken knowledge. UniCredito Italiano SPA v. JPMorgan Chase Bank, 288 F.Supp.2d 485, 497 (S.D.N.Y. 2003).

Bain's own complaint demonstrates why the Jackson parties had no duty of disclosure. It paints a picture of Bain as a savvy business woman who founded her own public relations firm, has represented "many high profile public figures in the

sports, entertainment and political fields," was responsible for essentially all of Jackson's affairs for a period of time,[3] and in fact "spoke to [him] several times a day" during that time. [#3 at ¶¶ 2,7-11, 18-41]. For the deals at issue here, Bain alleges more than minor involvement; she claims that she played an integral and substantial role in negotiating all of them. Id. Bain clearly knew that various deals were in the works - in fact, she admits to initiating them and participating in on-going discussions about them - and she does not explain why, given her relationships with the parties involved, she could not readily have discovered the status of the agreements before signing the Release. Thus, the Jackson parties had no duty to disclose the status of the projects on which Bain bases her claims, nor, if there were any omissions, was it reasonable for Bain to rely on

---

[3] Bain appears to take credit for saving Jackson from financial and legal ruin. If her recitation of the services she performed for Jackson is to be believed, she must have been more knowledgeable about Jackson's business than he was. She claims that, among other things, she was responsible for hiring a creative manager for Jackson (¶ 20); she hired a legal and accounting team (¶ 21); she facilitated an audit of Jackson's finances (¶ 22); she averted imminent foreclosures of his properties (¶ 23); she arranged Jackson's day-to-day housing and living requirements (¶ 24); she hired a new personnel company to pay Jackson's employees (¶ 25); she approved music usage requests that generated over ten million dollars in annual income for Jackson (¶ 26); she supervised a team of accountants to address complaints lodged with the California Department of Labor (¶ 27); and she was responsible for paying Jackson's creditors and other bills (¶ 28).

them.[4]  See Banque Franco-Hellenique de Commerce Intern. et Maritime, S.A. v. Christophides, 106 F.3d 22, 27 (2d Cir. 1997) (the defrauded person need not exercise due diligence, but reliance is not justifiable where the defrauded party exercised minimal diligence despite being "placed on guard or practically faced with the facts").

For the same reasons, Bain's argument that the Release is voidable under the doctrine of mistake must be rejected.  It is illogical to believe that the Jackson parties knew or should have known that Bain was unaware of the deals - a showing that is required to prove unilateral mistake.  See, e.g., Kraft Foods, Inc. v. All These Brand Names, Inc., 213 F.Supp.2d 326, 330 (S.D.N.Y. 2002).

Bain's equitable theories of recovery - quantum meruit and unjust enrichment - also fail.  As to Jackson's estate, Bain concedes that the PSA is a valid contract, which precludes relief under those theories.  See, e.g., Bloomgarden v. Coyer, 479 F.2d 201, 210 (D.D.C. 1973).  As to MJJ Productions, Bain provides no support for her contention that her efforts conferred a benefit on MJJ Productions that it unjustly retained, nor does she describe circumstances that would have reasonably notified MJJ

---

[4]     Because I find the Jackson parties had no duty to disclose the status of the deals, Bain's request, pursuant to Rule 56(f), for discovery on this topic and other irrelevant issues is denied.

Productions of her expectation that she would be paid.  In fact, Bain provides virtually no explanation of what or who MJJ Productions is; or how it is related to this suit; or whether she even interacted with it during her negotiations.  Such a claim without any support or reasonable likelihood of finding support through discovery cannot withstand summary judgment.

      An appropriate order accompanies this memorandum.


                                      JAMES ROBERTSON
                            United States District Judge